IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| AUDREY CREASEY, individually and on behalf of all similarly situated employees, | : : : | CIVIL ACTION |
| | : | No.: |
| Plaintiffs, | : | Hon. |
| v. | : : | |
| SIZELAND, INC. d/b/a SENIOR BENEFITS GROUP, a Michigan Domestic Profit Corporation, and PAUL SIZELAND, jointly and severally, | : : : : : | |
| Defendants. | : : | |

**COLLECTIVE AND CLASS
ACTION COMPLAINT AND JURY DEMAND**

Plaintiff, Audrey Creasy (hereinafter "Plaintiff"), on behalf of herself and all others similarly situated, by and through her undersigned counsel, for her Collective and Class Action Complaint against Defendants, alleges as follows:

**INTRODUCTION**

The Defendants in this action provided retirement benefits advice to customers including the following services: Medicare education, facilitation of Medicare plan selection and enrollment, and keeping customers advised on changes to their Medicare plan costs or coverage. Defendants employed – but intentionally misclassified as independent contractors – Sales Agents who were responsible for meeting Defendants' customers to provide their services. Pursuant to their intentional misclassification scheme, Defendants willfully refused to pay a minimum wage; willfully refused to pay overtime; and reduced Sales Agents' wages through unlawful

deductions.

Plaintiff, on behalf of herself and other similarly situated Sales Agents who currently or formerly worked for Defendants, contends that Defendants violated the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq*. ("FLSA") and state laws by: (1) misclassifying Sales Agents as independent contractors; (2) knowingly suffering and permitting Plaintiff and the putative Class members to work in excess of 40 hours during a workweek without paying overtime compensation at a rate of one-and-one half times their regular rate; (3) improperly reducing pay to Plaintiff and the putative Class members through unlawful deductions; and (4) adopting and implementing employment policies which violate the FLSA and state wage and hour laws.

During the relevant statutory periods, Defendants provided services to customers in at least 30 states across the United States.  The unlawful employment policies and pay practices that Defendants implemented across these locations were uniform and applied similarly to all Sales Agents.

Plaintiff brings this collective and class action seeking damages, back pay, restitution, liquidated damages, declaratory relief, civil penalties, prejudgment interest, reasonable attorneys' fees and costs, and any and all other relief that the Court deems just, reasonable, and equitable under the circumstances.

## **JURISDICTION & VENUE**

1.     This Court has subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 because the claims raise a federal question under the FLSA, 29 U.S.C. § 201, *et seq*.

2.     This Court has jurisdiction over this FLSA collective action pursuant to 29 U.S.C.

§ 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

3.      Defendants' annual sales exceed $500,000, and Defendants employ more than two persons, so the FLSA applies in this case on an enterprise basis.  Defendants' Sales Agents engaged in interstate commerce; therefore, they are also covered by the FLSA on an individual basis.

4.      Pursuant to Fed. R. Civ. P. 23 and in accordance with the applicable state laws, the named Plaintiff brings this action on behalf of current and former Sales Agents who worked for Defendants in numerous states during the applicable statutory time period of each state.

5.      This Court also has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) because: (1) this is a class action involving more than 100 class members; (2) the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs; and (3) at least one member of the proposed class is a citizen of a state different from Defendants.

6.      This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they arise under the same facts as their federal claims.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the actions and omissions giving rise to the claims pled in this Complaint substantially occurred in this District.

## THE PARTIES

8.      The named Plaintiff, Audrey Creasey, is a resident of Kent County, Michigan.  At all relevant times, Plaintiff was an employee of Defendants, as defined in 29 U.S.C. §201 *et*

*seq.*, and worked as a Sales Agent from September 2015 to January 2018. Ms. Creasy's Consent to Join form is attached hereto as ***Exhibit A***.

9.      Like all other putative Class members, Plaintiff was injured as follows: (1) she was misclassified as an independent contractor; (2) as a result, she was not paid the wages (including overtime) to which she was entitled as a non-exempt employee; and (3) her pay was reduced by way of unlawful deductions, as described more fully below.

10.     Defendant Sizeland, Inc., which does business as Senior Benefits Group (hereinafter referred to as "Sizeland") is a Michigan corporation with its principal place of business located in Brighton, Michigan.

11.     Defendant Paul Sizeland is a resident of Brighton, Michigan and is the current President and owner of Sizeland.

12.     Sizeland maintains its registered office at 719 E. Grand River, Brighton, Michigan 48116.

13.     Defendants were directly involved in the decision to misclassify Plaintiff and other Sales Agents as independent contractors rather than employees and to perpetuate and maintain this unlawful classification system.

14.     Defendants made the decision to misclassify their Sales Agents as independent contractors in order to evade their statutory obligations under the wage and hour laws and to increase their profits.

15.     Defendants are joint employers of all putative Class members and, as such, are jointly and severally liable for the unlawful conduct set forth in this Collective and Class Action Complaint.

4

16.     Defendants conspired to commit the following unlawful acts: (1) misclassifying Sales Agents as independent contractors; (2) knowingly suffering and permitting Plaintiff and the putative Class members to work in excess of 40 hours during a workweek without paying overtime compensation at a rate of one-and-one half times their regular rate; (3) improperly reducing pay to Plaintiff and the putative Class members through unlawful deductions; and (4) adopting and implementing employment policies which violate the FLSA and state wage and hour laws.

17.     Defendants knew or should have known the business model they developed and implemented was unlawful under applicable laws. Nonetheless, Defendants continued to willfully engage in the violations described herein.

18.     At all relevant times, Defendants owned and operated a business enterprise engaged in interstate commerce utilizing goods moved in interstate commerce as defined in 29 U.S.C. § 203(s).

19.     Defendants constitute an "enterprise" within the meaning of 29 U.S.C. § 203(r)(1), because they perform related activities through common control for a common business purpose.

20.     At all relevant times, Plaintiff and the Class members were engaged in commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

**FACTUAL ALLEGATIONS**

21.     Defendants provided retirement benefits advice to customers including the following services: Medicare education, facilitation of Medicare plan selection and enrollment, and keeping customers advised on changes to their Medicare plan costs or coverage.

22.     Defendants provided these services through its Sales Agents, whose job duties included consulting with potential customers on Medicare programs, proposing solutions to the customers' insurance needs, drafting contracts/policies, and servicing the customers.

23.     Defendants employed dozens of Sales Agents in approximately 30 different states.

24.     Before the Sales Agents were permitted to perform work, Defendants required them to attend a four-day training session in Brighton, Michigan, which was conducted by Paul Sizeland and Jim Neil.

25.     During this initial training session, Defendants taught the Sales Agents everything they needed to know and trained them on the Medicare products they would be selling to Defendants' customers, along with updates and current developments involving the Medicare programs.

26.     Once the initial training session was completed, Defendants' Sales Agents were permitted to begin their work.  However, Defendants required the Sales Agents to attend additional training sessions 2-3 times per year.

27.     Sales Agents were held captive by Defendants and were told they could not conduct business through any other company – only through Defendants.

28.     Defendants were responsible for locating potential customers, fielding calls through a call center, and scheduling appointments with their Sales Agents.

29.     Once an appointment with a potential customer was on the schedule, Defendants' Sales Agents were responsible for attending and running the appointments.

30.     As an Agent, Plaintiff checked her email every day to learn when and where her

appointments would be.

31.     Plaintiff averaged between 35-50 appointments per week.

32.     As such, Plaintiff spent many hours and logged extensive mileage on her personal vehicle to attend the appointments Defendants scheduled for her.  During the slow season, Plaintiff worked approximately 30 hours per week; however, during the busy season, Plaintiff worked 50-60 hours per week.

33.     Defendants paid their Sales Agents on a commission-only basis.

34.     If Defendants generated the customer, the Agent would receive a 50% commission; if the Agent generated the customer, the Agent was supposed to receive a 70% commission.

35.     A portion of the commission paid to Defendants was to cover their marketing costs.

36.     Defendants paid their Sales Agents on a bi-monthly basis, which consisted of a flat $1,000 draw on the 15th and 30th of each month.

37.     Defendants also maintained an escrow account for each of its Sales Agents, which Defendants used to track the Sales Agents' draws and commissions earned.

38.     When a Sales Agent wrote a contract, their escrow was to be credited an agreed upon amount, per month, for each month that the contract was utilized.

39.     All customers paid fees directly to Defendants, who credited the Sales Agents' escrow accounts (after taking Defendants' portion).

40.     In 2017, Defendants unilaterally changed their Sales Agents' compensation structure and began paying their Sales Agents a flat $250 for each contract they wrote with a

customer.

41.     In 2017, Defendants also began charging their Sales Agents' escrow accounts for fifty percent (50%) of Defendants' marketing costs.

42.     Defendants implemented the change in the Sales Agents' compensation structure without any agreement from the Sales Agents and, in fact, over the Sales Agents' objections.

43.     Defendants refused to provide any accounting or escrow statements to their Sales Agents, despite express requests to do so.

44.     When Plaintiff requested an accounting of her escrow account, Defendants gave her the run-around and otherwise ignored her requests.

45.     Upon information and belief, Plaintiff's escrow account was not credited properly for the commissions she earned.

46.     All of Defendants' Sales Agents were required to obtain approval from a supervisor regarding contracts they drafted for customers.

47.     In the event a Sales Agent contacted Defendants' office to move an appointment or otherwise deviate from the standard protocols they were subjected to ridicule and swearing from Defendant Paul Sizeland and Jim Neil.

48.     As a matter of common policy and practice, Defendants misclassified all of their Sales Agents as independent contractors.

49.     Workers in the putative Class cannot "elect" to be treated as employees or independent contractors.  Nor can workers in the putative Class agree to waive their right to overtime.  Despite this, Defendants unfairly, unlawfully, fraudulently, and unconscionably attempt to coerce workers in the Class to waive their statutory rights and elect to be treated as

independent contractors.

50.     Any contract which attempts to have workers in the putative Class waive, limit, or abridge their statutory rights to be treated as an employee under the FLSA or other applicable wage and hour laws is void, unenforceable, unconscionable, and contrary to public policy.

51.     The determining factor as to whether Plaintiff and those similarly situated are employees or independent contractors under FLSA is not the workers' election, subjective intent, or any contract.  Rather, the test for determining whether an individual is an "employee" under the FLSA is the economic reality test.  *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947).  Under the economic reality test, employee status turns on whether the individual is, as a matter of economic reality, in business for herself and truly independent or, rather, is economically dependent upon finding employment in others.

52.     Under the applicable test, courts utilize the following factors to determine economic dependence and employment status: (1) the degree of control exercised by the alleged employer; (2) the relative investments of the alleged employer and employee; (3) the degree to which the employee's opportunity for profit and loss is determined by the employer; (4) the skill and initiative required in performing the job; (5) the permanency of the relationship; and (6) the degree to which the alleged employee's tasks are integral to the employer's business.

53.     The totality of circumstances surrounding the employment relationship between Defendants and the putative Class members establishes economic dependence by the putative Class on Defendants and employee status.  Here, Plaintiff and all other Class members were not in business for themselves and truly independent, but rather are economically dependent upon finding employment with Defendants.

54.     The putative Class members were not engaged in occupations or businesses distinct from that of Defendants. To the contrary, the putative Class members were the basis for Defendants' business.  Defendants obtained the customers who seek out Medicare assistance, and Defendants provided the Sales Agents who provide the assistance on Defendants' behalf. Defendants retained pervasive control over the business operations as a whole, and the putative Class members.

### a.      Facts Establishing the Degree of Control Exercised by Defendants

55.     Plaintiff and the other members of the putative Class do not exert control over any meaningful part of Defendants' business operations and did not stand as a separate economic entity from Defendants. Defendants exercise control over all aspects of the working relationship with Plaintiff and the putative Class members.

56.     Plaintiff's and the putative Class members' economic status was inextricably linked to conditions over which Defendants had complete control, including without limitation advertising and promotion, business and financial relationships with customers, business and financial relationship with insurers, and customer volume.

57.     Defendants exercise the following significant control over the work conditions of their Sales Agents:

> a.   Defendants required Plaintiff and Class members to attend all appointments scheduled by Defendants;
>
> b.   Defendants required Plaintiff and Class members to routinely work in excess of 40 hours per week;
>
> c.   Defendants paid Plaintiff and Class members only a $1,000 draw on a bi-monthly basis;
>
> d.   Defendants subjected Plaintiff and Class members to improper pay deductions in order to subsidize Defendants' marketing and other business

expenses;

e.   Defendants required Plaintiff and Class members to undergo and obtain extensive training, education, and continuing education;

f.   Defendants required Plaintiff and Class members to use forms and paperwork Defendants provided;

g.   Defendants required Plaintiff and Class members to maintain and distribute Defendants' business cards; and

h.   Defendants required Plaintiff and Class members from performing any work or services for other companies during the time they worked for Defendants.

**b.   Facts Establishing No Skill or Initiative of a Person in Business for Herself**

58.   Plaintiff, like all Class members, did not exercise the skill and initiative of a person in business for herself or himself.

59.   Plaintiff and the Class members are not required to have any specialized or unusual skills to perform their job.   The skills utilized in performing their work are commensurate with those exercised by ordinary people.

60.   Plaintiff, like all other Class members, did not have the opportunity to exercise the business skills and initiative necessary to elevate their status to that of an independent contractor: they owned no enterprise, nor did they maintain a separate business structure or facility.

61.   Plaintiff and the Class members had no control over customers, nor did they actively participate in any efforts to increase Defendants' customer base or profit, or to improve business in any capacity.

62.   Defendants did not permit Plaintiff or other Class members to hire or subcontract other qualified individuals to provide additional services to customers, thereby increasing their

revenue, as an independent contractor in business for herself would have the authority to do.

        **c.**    **Facts Establishing Relative Investment**

63.    Plaintiff and the Class members' relative investment is minor when compared to the investment made by Defendants.

64.    Plaintiff and the Class members made no financial investment in Defendants' facilities, advertising, maintenance, staffing, and contractual relationships. All capital investment and risk belonged to Defendants.

65.    Plaintiff's and the Class members' investment was limited to fuel, amounts paid for vehicle maintenance, and Defendants' unlawful deductions from pay. Absent Defendants' investment and provision of the business, the Sales Agents would not earn anything.

        **d.**    **Facts Establishing Opportunity for Profit and Loss**

66.    Defendants managed all aspects of the business operations, including without limitation attracting potential customers, establishing business and customer relationships, establishing the hours of operation, coordinating advertising, and hiring and controlling the staff. Defendants provided all necessary capital to open and operate the business.

67.    Neither Plaintiff nor the Class members had responsibility for any aspect of Defendants' ongoing business risk.

68.    While Defendants did offer to pay commissions to their Sales Agents, they rarely adhered to the agreement and often did not pay any commissions at all.

        **e.**    **Facts Establishing Permanency**

69.    Plaintiff worked for Defendants as a Sales Agent in Defendants' respective assigned coverage area during the applicable statutory period.  Plaintiff and many of the Class

members worked for Defendants for years.

  **f.**  **Facts Establishing Class Members Are an Integral Part of Employer's Business**

  70.  Plaintiff and the Class members were critical to Defendants' success. Defendants' operation was wholly dependent on the services Sales Agents provided for customers.

  71.  The primary "product" or "good" Defendants are in business to sell consisted of services provided by Plaintiff and members of the Class.

  72.  Members of the Class, like Plaintiff, were economically dependent on Defendants and subject to significant control by Defendants.

  **g.**  **Facts Establishing That Defendants' Acts Were Willful**

  73.  The actions by Defendants described herein were willful and intentional, and they were not the result of mistake or inadvertence.

  74.  Defendants were or should have been aware that the FLSA applies to their business at all relevant times and that, under the economic realities test applicable to determining employment status under those laws, Plaintiff and Class members were misclassified as independent contractors.

  75.  Sales Agents working under conditions similar to those employed with Defendants have been determined by courts to be employees—not independent contractors—in other FLSA cases.

  76.  Despite this notice of their violations, and in an effort to enhance Defendants' profits, Defendants continued to intentionally misclassify Sales Agents like Plaintiff and similarly situated Sales Agents, failed to pay them minimum wage in violation of FLSA,

knowingly suffered and permitted them to work in excess of 40 hours during a workweek without paying overtime compensation at a rate of one and one-half times their regular rate, and improperly reduced their pay through unlawful deductions. Such conduct was intentional, unlawful, fraudulent, deceptive, unfair, and contrary to public policy.

## INJURY AND DAMAGE

77.     Plaintiff and the Class members suffered harm, injury, and damage, including financial loss, as a result of Defendants' conduct complained of herein.

78.     Plaintiff and the Class members were entitled to overtime pay for their work performed for Defendants. Further, Defendants were not allowed to make improper and unlawful deductions from Plaintiff's and Class members' pay.  By failing to pay Plaintiff and the Class members overtime pay and interfering with their right to retain all of their earned commissions, Defendants injured Plaintiff and the Class members and caused them financial loss, harm, injury, and damage.

## COLLECTIVE ACTION ALLEGATIONS

79.     Plaintiff brings Count I and II of this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of all similarly situated current and former workers of Defendants who were subject to Defendants' illegal misclassification scheme at any time during the last three years.

80.     Excluded from the Class are all of Defendants' executives, administrators, professional employees, and outside sales persons.

81.     A collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the workers described as parties to the Complaint are "similarly situated" to the named

Plaintiff.

82.     The workers Plaintiff seeks to represent in this case include:

*All Sales Agents who worked for Defendants and were classified by Defendants as independent contractors at any time in the past three years.*

83.     The putative Class members are similarly situated to the named Plaintiff because they worked in the same or similar positions, were subjected to the same unlawful practices, policies, or plans, and their claims are based upon the same factual and legal theories.

84.     The working relationships between Defendants and every putative Class member are the same and differ only in name and location. The key legal issue in the collective action—whether Defendants' classification policy and practice violated the FLSA—does not vary substantially from Class member to Class member.

85.     Plaintiff estimates the Class, including both current and former Sales Agents over the relevant three-year period, will include over 100 members.  The precise number of Class members should be readily discernible from a review of Defendants' records.

## CLASS ACTION ALLEGATIONS

86.     Plaintiff brings Counts III – VII of this action as a class action pursuant to Federal Rule of Civil Procedure 23.

87.     Named Plaintiff brings this action individually and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure (hereinafter the "Class"):

**The Rule 23 Class is defined as follows:**

*All Sales Agents who worked for Defendants and were classified by Defendants as independent contractors at any time in the past six years.*

88.     All requirements of Federal Rule of Civil Procedure 23 are satisfied to maintain a

class action.

89.     The individuals in the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members has not been determined at this time, upon information and belief, Defendants have employed over 100 Class members during the relevant time period.  Plaintiff and members of the Rule 23 Class were equally affected by Defendants' violations of law.

90.     There are questions of law and fact common to the Class that predominate over any questions affecting individual members, including, but not limited to:

      a.   Whether Defendants violated the rights of Plaintiff and the Class by routinely subjecting them to improper pay deductions in order to subsidize Defendants' marketing and other overhead expenses;

      b.   The amount of damages, restitution, and/or other relief (including all applicable civil penalties, liquidated damages, and equitable relief available to which Plaintiff and the Class members are entitled); and

      c.   Whether Defendants should be enjoined from such violations in the future.

91.     Plaintiff's claims are typical of those of the Class.  Plaintiff, like other members of the Class, were subjected to Defendants' policies and willful practices of improper pay deductions in order to subsidize Defendants' marketing and other overhead expenses.  Plaintiff and members of the Rule 23 Class have sustained similar injuries as a result of the Defendants' actions.

92.     Plaintiff is an adequate representative of the Class.  Plaintiff retained counsel experienced in complex wage and hour cases and collective/class action litigation.

93.     Plaintiff is a member of the Class. Given Plaintiff's injuries and losses, Plaintiff is committed to the prosecution of this action for the benefit of the Class.

94.     Plaintiff has no interest that would cause her to act adversely to the best interests of the class action litigation. This action is maintainable as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants.

95.     This action is maintainable as a class action because questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class and because a class action is superior to other methods for the fair and efficient adjudication of this action.

96.     Plaintiff intends to send notice to all members of the Rule 23 Class to the extent required by the Federal Rules of Civil Procedure.

### COUNT I – VIOLATION OF THE FLSA
### (Failure to Pay Overtime Wages)
### (Against all Defendants)

97.     Plaintiff incorporates by reference all preceding paragraphs.

98.     This claim arises out of Defendants' willful violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, for failure to pay Plaintiff and members of the Class the federally mandated overtime premium rate of one and a half times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek, 29 U.S.C. § 207, to which they were entitled.

99.     At all times relevant to this action, Defendants were "employers" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. § 201, *et seq*.

100.    At all times relevant to this action, Plaintiff and the Class members were

"employees" of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

101.    At relevant times, all Defendants jointly employed Plaintiff and all similarly situated Class members within the meaning of the FLSA.

102.    Defendants engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

103.    Plaintiff and the Class members either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) employed in an enterprise engaged in commerce or in the production of goods for commerce.

104.    The position of Sales Agent is not exempt from the FLSA.

105.    At all times relevant to this action, Defendants "suffered or permitted" Plaintiff and the Class members to work and thus "employed" them within the meaning of the FLSA, 29 U.S.C. § 203(g).

106.    The FLSA requires an employer to pay employees the federally mandated overtime premium rate of one and one-half times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

107.    29 U.S.C. § 207(a)(2)(c) provides in pertinent part:

> No employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce . . . for a workweek longer than forty hours . . . unless such employee receives compensation for his employment in excess of the hours above specified at a rate of not less than one and one-half times the regular rate at which he is employed.

108.    Defendants violated the FLSA by failing to pay Plaintiff and the Class members the federally mandated overtime premium for all hours worked in excess of forty (40) hours per

workweek.

109.    Defendants' violations of the FLSA were knowing and willful.

110.    By failing to compensate their Sales Agents at a rate not less than one and one-half times their regular rate of pay for work performed in excess of forty hours in a workweek, Defendants violated the FLSA, 29 U.S.C. § 201, *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).   All similarly situated employees are victims of a uniform and company-wide enterprise which operates to compensate employees at a rate less than the federally mandated overtime wage rate.  This uniform policy, in violation of the FLSA, has been, and continues to be, applied to all employees who have worked or are working for Defendants in the same or similar position as Plaintiff.

111.    The FLSA, 29 U.S.C. 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid overtime wages plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees.

112.    As a result of the foregoing conduct, Plaintiff seeks on behalf of herself and all members of the Class, unpaid overtime wages at the required legal rate for all working hours during the relevant time period, all other damages, attorneys' fees and costs, restitution, liquidated damages, penalties, injunctive relief, interest calculated at the highest legal rate, and all other relief allowed by law.

## COUNT II

### VIOLATION OF 29 C.F.R § 516, *et seq.* FAILURE TO MAINTAIN REQUIRED RECORDS

113.    Plaintiff realleges and incorporates all preceding paragraphs.

114.    29 C.F.R § 516.1 subjects "every employer subject to any provisions of the Fair

Labor Standards Act" to maintain employee records.

115.    The FLSA requires all employers to keep all payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees).  See 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

116.    In pertinent part, 29 U.S.C. § 211(c) provides as follows:

> Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

117.    Under 29 C.F.R. §§ 516.2 and 825.500, every employer must maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek.

118.    To the extent Defendants failed to maintain all records required by the aforementioned statutes and regulations, and failed to furnish Plaintiff and the Class comprehensive statements showing the hours they worked during the relevant time period, Defendants also violated the aforementioned laws causing Plaintiff and the Class damages.

119.    When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946), *superseded by statute on other grounds*,  is controlling.  That rule states,

> [W]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden

then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

120.    The Supreme Court set forth this test to avoid incentivizing an employer's failure to keep proper records in conformity with its statutory duty, which would enable the employer to reap the benefits of the employees' labors without paying the proper compensation required by the FLSA.  Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with . . . the Act."  *Id.*

121.    As Plaintiffs' employer, Defendants were subject to the FLSA's recordkeeping requirements.

122.    Defendants' obligations were to maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek.  29 C.F.R § 516.2.

123.    Upon information and belief, Defendants maintain corporate policies and/or practices of evading pay for its hourly employees by altering their time records and pay periods.

124.    Defendants failed to maintain and preserve accurate timesheets and payroll records as required by 29 C.F.R § 516.2.

125.    As a result of Defendants' recordkeeping violations, Plaintiffs seek a declaratory judgment and order that the *Anderson* burden-shifting framework applies in this case, along with all other relief just and appropriate in the circumstances.

**COUNT III – UNJUST ENRICHMENT/QUANTUM MERUIT**
**(Improper and Unlawful Pay Deductions)**

**(Against All Defendants)**

126.     Plaintiff incorporates by reference all preceding paragraphs.

127.     Plaintiff and Class members provided valuable labor to Defendants that inured to Defendants' benefit and for which they were not compensated.

128.     Through their work for Defendants, Plaintiff and Class members provided a material benefit to Defendants.

129.     Defendants received and accepted the above-referenced services and enjoyed the benefits therefrom.

130.     Pursuant to Defendants' policies, Plaintiff and others similarly situated routinely suffered improper pay deductions to account for: (1) marketing expenses; (2) alleged mileage miscalculations; and (3) alleged insurer refusal to pay mileage invoices exceeding certain distances.

131.     Defendants instituted these policies so that they could retain the material benefit of the work performed by Plaintiff and Class members without providing them appropriate compensation.

132.     Defendants were unjustly enriched by the retention of monies that should have been paid to Plaintiff and Class members in exchange for their services but were, instead, improperly and unlawfully deducted from the pay of Plaintiff and the Class members as a result of Defendants' illegal policies.

133.     As result of Defendants' unjust enrichment, Plaintiff and the Class members did not receive fair compensation for the work they performed and Defendants were unjustly enriched in an amount to be determined.

**COUNT IV – ACCOUNTING FOR PROFITS**

**(Against All Defendants)**

134.    Plaintiff incorporates by reference all preceding paragraphs**.**

135.    A contractual relationship exists between Defendants and each of the Class members.

136.    Under the contracts, Defendants had a duty to reconcile and account for all transactions relating to their operating profits, including the payout of commissions to Plaintiff and the Class members.

137.    Defendants refused and/or neglected to provide such an accounting on Plaintiff's and the Class members' requests.

138.    The only manner by which a true accounting of these transactions that occurred during the relevant time period would be through a forensic accounting.

139.    Plaintiff requests that this Court order the Defendants to undertake at their cost a forensic accounting of Defendants' books and determine when and if any commission payments were made to the Sales Agents and whether funds utilized by Defendants have been utilized to enrich the principals and owners of the same.

## COUNT V – CONSTRUCTIVE TRUST
**(Against All Defendants)**

140.    Plaintiff incorporates by reference all preceding paragraphs**.**

141.    Defendants, or individuals associated with them (including Paul Sizeland), received monies that rightfully belong to Plaintiff and the Class members pursuant to their contractual relationship.

142.    Despite Plaintiff's and the Class members' repeated requests, Defendant have failed and refused to turn over to Plaintiff and the Class members their unpaid commissions.

143.     Additionally, Defendants will continue to receive monies that belong to Plaintiff and the Class members through payment for sales generated by Plaintiffs during the relevant time period.  Based on Defendants' actions thus far, it is unlikely that Defendants will turn over to Plaintiffs their unpaid commissions.  Further, upon information and belief, it is anticipated that Defendants will distribute those monies to Defendant Paul Sizeland.

144.     A constructive trust must be created to rectify the wrongs Plaintiff and the Class members have suffered and will continue to suffer in the future.

## COUNT VI:  CONVERSION

145.     Plaintiff incorporates by reference all preceding paragraphs**.**

146.     Defendants wrongfully transferred, exerted dominion and control over, and/or otherwise interfered with, funds owned by Plaintiff. Specifically, by withholding commissions due to Plaintiff, and unlawfully charging marketing and other overhead expenses to Plaintiff, Defendants intentionally and knowingly converted, for their own use, funds owned by Plaintiff.

147.     As the owner of at least 50% of the commissions generated by Plaintiff's work, and received by Defendants, Plaintiff has an interest in those funds and, accordingly, was damaged by Defendants' wrongful conversion.

148.     This interference is so serious that it warrants requiring Defendants to pay the full value they wrongfully converted.

149.     As a direct and proximate result of Defendants' conversion of these funds, Plaintiff suffered damages.

## COUNT VII:  STATUTORY CONVERSION, MCL § 600.2919a

150.     Plaintiff incorporates by reference all preceding paragraphs**.**

151.   Defendants wrongfully transferred, exerted dominion and control over, and/or otherwise interfered with, funds owned by Plaintiff. Specifically, by withholding commissions due to Plaintiff, and unlawfully charging marketing and other overhead expenses to Plaintiff, Defendants intentionally and knowingly converted, for their own use, funds owned by Plaintiff.

152.   As the owner of at least 50% of the commissions generated by Plaintiff's work, and received by Defendants, Plaintiff has an interest in those funds and, accordingly, was damaged by Defendants' wrongful conversion.

153.   Defendants had no valid claim of ownership to any of the funds that were obtained through their unilateral withholdings for expense reimbursements, and converted them without proper authority or permission.

154.   Pursuant to MCL 600.2919a(1), Plaintiff is entitled to treble damages arising from the conversion of her funds by Defendants.

155.   As a direct and proximate result of Defendants' conversion of these funds, Plaintiff suffered damages.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests the following relief:

a.   Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

b.   Designating the named Plaintiff as Class Representative;

c.   Declaring that Defendants willfully violated their obligations under the FLSA and its attendant regulations as set forth above;

f.   Certifying this matter to proceed as a class action;

g.   Designating Kreis Enderle, P.C. and Avanti Law Group, PLLC as Co-Lead Counsel for Plaintiff and the Class members on their Collective Action and Rule 23 Class Action claims;

h.      Awarding Plaintiff and the Class members all available compensatory damages and punitive damages, including, *inter alia*, all contractual monies and unpaid wages owed under applicable law;

i.        Granting judgment in favor of Plaintiff and the Class members and against Defendant and awarding the lost overtime compensation calculated at the rate of one and one-half (1.5) of Plaintiffs and Class members' regular rate multiplied by all hours that Plaintiffs and Class members worked in excess of forty (40) hours per week for the past three years;

j.       Awarding liquidated damages to Plaintiffs and Class members in an amount equal to the amount of unpaid overtime found owing to them;

k.      Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action;

l.       Awarding pre- and post-judgment interest to Plaintiffs on these damages; and

m.     Such further relief as this court deems appropriate.

Dated: August 20, 2020               Respectfully Submitted,

                         */s/ Robert Anthony Alvarez*    .
                         Robert Anthony Alvarez (P66954)
                         Avanti Law Group. PLLC
                         600 28th Street SW
                         Wyoming, MI 49509
                         (616) 257-6807
                         ralvarez@avantilaw.com

                         */s/ Jesse L. Young*
                         Jesse L. Young (P72614)
                         **KREIS ENDERLE, P.C.**
                         8225 Moorsbridge, P.O. Box 4010
                         Kalamazoo, Michigan 49003-4010
                         (269) 324-3000
                         jyoung@kehb.com

                         *Counsel for Plaintiffs*

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

Dated: August 20, 2020                    Respectfully Submitted,

*/s/ Robert Anthony Alvarez* .
Robert Anthony Alvarez (P66954)
Avanti Law Group. PLLC
600 28th Street SW
Wyoming, MI 49509
(616) 257-6807
ralvarez@avantilaw.com

*/s/ Jesse L. Young*
Jesse L. Young (P72614)
**KREIS ENDERLE, P.C.**
8225 Moorsbridge, P.O. Box 4010
Kalamazoo, Michigan 49003-4010
(269) 324-3000
jyoung@kehb.com

*Counsel for Plaintiffs*

## VERIFICATION

I declare under penalty of perjury that the statements outlined above in this Collective and Class Action Complaint are true and accurate to the best of my knowledge, information, and belief.

Date: July 30, 2020

Audrey Creasey